UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JORGE GALLEGOS GUADALAJARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:26-cv-00019-MPB-MG |
| ) | |
| SAM OLSON Field Office Director of ) | |
| Enforcement and Removal Operations, Chicago ) | |
| Field Office, Immigration and Customs ) | |
| Enforcement, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

Jorge Gallegos Guadalajara seeks a writ of habeas corpus requiring that he be released from U.S. Immigration and Customs Enforcement (ICE) detention or, alternatively, that he receive a bond hearing. Because the undisputed facts demonstrate that Mr. Gallegos Guadalajara is eligible for a bond hearing and that the government has not afforded him a hearing, the Court grants his petition by directing that he be afforded a bond hearing or released from detention.

**I. Background**

Mr. Gallegos Guadalajara is a 36-year-old Mexican national. He entered the United States without inspection as an adolescent in 2004. Dkt. 1 ¶¶ 39–40.

According to ICE records, the U.S. Drug Enforcement Administration (DEA) arrested Mr. Gallegos Guadalajara on January 9, 2026, in Chicago's western suburbs. Dkt. 7-1 at 6. There is no indication that he has been charged with a crime related to that arrest. DEA officials contacted ICE officials, who took custody of Mr. Gallegos Guadalajara the following day. *Id.*

ICE officials determined that Mr. Gallegos Guadalajara was subject to removal and issued a notice to appear for removal proceedings. *Id.* at 1–4, 7. He is presently detained at the Clay County Justice Center at ICE's direction. There is no indication that Mr. Gallegos Guadalajara has appeared before an immigration judge.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Gallegos Guadalajara argues that he is detained without any possibility of bond and that he is therefore in custody in violation of the Fifth Amendment and the Immigration and Naturalization Act (INA). He asks the Court to order the respondents to release him immediately or at least grant him a bond hearing. The respondents answer that Mr. Gallegos Guadalajara must be detained under 8 U.S.C. § 1225 and that this Court lacks jurisdiction to review the Attorney General's discretionary decision to withhold bond. Alternatively, the respondents argue, Mr. Gallegos Guadalajara is entitled to at most a bond hearing, and they ask the Court to dismiss this case on grounds that Mr. Gallegos Guadalajara has not yet requested a bond hearing.

For the reasons that follow, the Court finds that Mr. Gallegos Guadalajara's detention is authorized by § 1226, and he is therefore eligible for a bond hearing. The Court further finds that the relief warranted by his petition is a bond hearing. Finally, the Court finds that Mr. Gallegos Guadalajara's petition is not precluded by the fact that he has not yet requested a bond hearing. Therefore, the Court directs the respondents to afford Mr. Gallegos Guadalajara a bond hearing or certify that he has been released from custody.

A.   **Eligibility for Bond Under § 1226**

Mr. Gallegos Guadalajara argues that circumstances preceding his arrest and detention dictate that his detention may only be authorized by 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> >  (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> >  (B) conditional parole[.]

The respondents answer that Mr. Gallegos Guadalajara's detention is not only authorized but required by 8 U.S.C. § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. They insist that, because Mr. Gallegos Guadalajara has not been admitted to the United States by immigration officials, and because he opposes his removal, he is an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 7 at 8–10. The Court rejects the respondents' argument for the following reasons.

1.   **Discretionary Detention Under § 1226(a)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated

under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

### 2. Mandatory Detention Under § 1225(b)(2)

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt*

*entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### 3. Mr. Gallegos Guadalajara's Detention

The respondents argue that Mr. Gallegos Guadalajara is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission" according to § 1225(a)(1), who is not covered by the narrower provisions for "arriving aliens" in § 1225(b)(1), and who is "not clearly and beyond doubt entitled to be admitted." Dkt. 7 at 9–10.

The Seventh Circuit recently responded to this argument with skepticism. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. Dec. 11, 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record.").

Before and since, this Court and the vast majority of other district courts have rejected the government's interpretation. *See, e.g.*, *Vargas Torres v. Swearningen*, No. 2:25-cv-00629-MPB-MKK, dkt. 14 at 2–5 (S.D. Ind. Jan. 9, 2026) (collecting cases); *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). The

5

respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Id.* (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

The respondents here cite contrary decisions, including one from within the Seventh Circuit. Dkt. 7 at 2–4 (citing, among other cases, *Cruz Rodriguez v. Oson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026)). *Cruz Rodriguez* offers a thorough and thoughtful analysis of §§ 1225 and 1226 and concludes that both provisions apply to certain aliens apprehended inside the United States. *See Cruz Rodriguez*, 2025 WL 3672856, at *7 ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). This Court finds that logic problematic for reasons expressed in previous decisions. Regardless, this Court joins another jurist from the Northern District of Illinois in deferring to *Castañon-Nava* as highly persuasive, directly applicable authority from a superior tribunal on a pure question of law. *See Morales Perez v. Walsh*, No. 1:25-CV-14995, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026).

The respondents concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 7 at 1. Lacking any binding authority in the other direction, or any persuasive authority more compelling than *Castañon-Nava*, the Court declines to depart from its previous reasoning. The government's authority to detain Mr. Gallegos Guadalajara stems from § 1226(a).

**B.      Inapplicability of § 1226(e)**

The respondents also argue that, even if Mr. Gallegos Guadalajara's detention is governed by § 1226, then § 1226(e) deprives the Court of jurisdiction over his claim. This argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny bond or parole. The Attorney General has not rendered a discretionary judgment under § 1226. She has not rendered any judgment at all. She has not considered the possibility of bond or parole and therefore has not revoked or denied it.

Section 1226(e) might preclude this Court's intervention if Mr. Gallegos Guadalajara requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result. But there is no record that Mr. Gallegos Guadalajara has appeared before an immigration judge. The attorney general has not made a discretionary decision to detain him. The respondents insist that she has no discretion. Section 1226(e) does not apply to this case.

**C.      Relief Available**

Mr. Gallegos Guadalajara argues that his detention without consideration of bond violates the Constitution and laws of the United States and asks the Court to order his immediate release. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Whether viewed through the scope of § 1226 or the Fifth Amendment, the appropriate relief for Mr. Diaz Flores is a bond hearing—not immediate release. He maintains—and the Court agrees—that he is subject to § 1226, which allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Gallegos Guadalajara's custody

is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires.

**D.      Exhaustion of Administrative Remedies**

Finally, the respondents argue that Mr. Gallegos Guadalajara's claims are premature because he has not moved for a bond hearing. Dkt. 7 at 6–7. Mr. Gallegos Guadalajara argues that it is futile to attempt to exhaust his administrative remedies because the BIA has already directly addressed the issue of his statutory qualification for bond in *Matter of Yajure Hurtado*. Dkt. 8 at 2.

Respondents do not cite a statute requiring Mr. Gallegos Guadalajara to request a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies before seeking habeas release because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2–3, 6–9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Gallegos Guadalajara was not required to exhaust administrative remedies because doing so would be futile.

### III. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **seven days** to certify that Mr. Gallegos Guadalajara has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention. The petition is **denied** to the extent it seeks an order that Mr. Gallegos Guadalajara be immediately released. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Dated:  January 30, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Alush Kola
Law Offices of Al Kola
alkolalaw@yahoo.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov